UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DANIEL DAVID LOPEZ, AF9742,

Plaintiff,

v.

DR. KATHRYN RIOS, et al.,

Defendant(s).

Case No. 25-cv-00363-CRB  (PR)

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

(ECF No. 18)

Plaintiff, a prisoner at the Correctional Training Facility in Soledad, California (CTF), filed a pro se complaint under 42 U.S.C. § 1983 alleging that CTF doctors Kathryn Rios and Hal Grotke were deliberately indifferent to his serious medical needs in connection with an Achilles tendon injury he suffered while playing basketball in the exercise yard. Plaintiff specifically alleges that Dr. Rios improperly denied and delayed adequate medical care for his serious injury by dismissing it as an ankle sprain to save money and that Dr. Grotke improperly denied and delayed adequate medical care for his serious injury by denying plaintiff's primary care provider's (PCP) request for an MRI of plaintiff's right ankle. Plaintiff claims he suffered unnecessary and wanton infliction of pain until he eventually was taken to see a specialist who recommended surgery for plaintiff's Achilles tendon rupture and the surgery was performed.

The court screened the complaint pursuant to 28 U.S.C. § 1915A and found that plaintiff's allegations, when liberally construed, appear to state an arguably cognizable claim under § 1983 for deliberate indifference to serious medical needs against defendant doctors Rios and Grotke and ordered them served.

Defendants filed a motion for summary judgment (MSJ) on the grounds that there are no material facts in dispute and that they are entitled to judgment as a matter of law. They also claim they are entitled to qualified immunity. Plaintiff filed an opposition and defendants filed a reply.

**FACTUAL BACKGROUND**

The following facts are undisputed unless otherwise noted:

A.     Injury and Initial Diagnosis

On March 8, 2024, plaintiff was playing basketball in the exercise yard when he pushed off with his right foot to get rebound after taking a shot and "felt it pop." Pl.'s Depo. (MSJ Ex. F (ECF No. 18-6 at 65)) at 25. Plaintiff fell to the ground and thought he suffered "a serious Achilles tendon injury." Compl. (ECF No. 1) at 7. Medical staff placed plaintiff in a wheelchair and transported him to CTF's Triage and Treatment Area (TTA). Id.

At the TTA, plaintiff was seen by Registered Nurse (RN) Rutzakis, who consulted with defendant Dr. Rios, the on-call physician, over the telephone. Rios Decl. (ECF No. 18-3) at 5-6. RN Rutzakis examined plaintiff's ankle and found "[n]o bruising or swelling." Pl.'s Medical Records II (MSJ Ex. H (ECF No. 18-6 at 170) at AG062. Dr. Rios instructed RN Rutzakis to perform a Thompson Squeeze Test using the standard positions. Rios Decl. at 5-6. The Thompson Squeeze Test is a clinical exam that assesses the integrity of the Achilles tendon and has a high degree of reliability. It has two standard positions. The first involves the patient laying on their stomach with their feet hanging off the end of the exam table. The second involves the patient laying on their stomach with their legs in the air. In both standard positions, the examiner squeezes the calf area and watches for plantarflexion. If there is no plantarflexion, the test is positive for possible Achilles tendon rupture. Id. at 4-5. RN Rutzakis administered the Thompson Squeeze Test and reported "normal plantarflexion with calf squeeze bilaterally," Pl.'s Medical Records II at AG062, indicating the test was "negative" and there was no Achilles tendon rupture, Rios Decl. at 6. Plaintiff claims the test was not performed correctly. See Pl.'s Depo. at 31-33.

Dr. Rios's tentative diagnosis was "Achilles tend[i]nopathy [(inflammation of the Achilles tendon)], acute, R heel." Pl.'s Medical Records II at AG062. Plaintiff "d[id] not have a complete rupture," id., but the presented swelling and associated pain were consistent with a tendinopathy diagnosis," Rios Decl. at 6. Dr. Rios prescribed plaintiff Ketorolac and Ibuprofen (NSAID medications) for pain, crutches to limit further aggravation of his injury, and instructed plaintiff to follow-up with his PCP in five days. Pl.'s Medical Records II at AG062; Rios Decl. at 6. Plaintiff

2

United States District Court
Northern District of California

claims Dr. Rios should have diagnosed him with an Achilles rupture and sent him to an outside hospital because there was an indent in his right Achilles tendon and minor swelling on the ankle. See Pl.'s Depo. at 29-31.

Plaintiff returned to his cell on the third tier of the Wing Housing Unit. Id. at 30, 36. Americans with Disabilities Act (ADA) workers (inmates designated to assist those with disabilities) helped plaintiff navigate the three flights of stairs. Id. They continued to assist plaintiff in the coming weeks, helping him access and leave his cell for showers every other day, and college classes in the evening. Id. at 30, 36, 56-57. Correctional officers and porters brought plaintiff his meals. Id. at 42, 56-57.

B.    March 10, 2024, Health Care Services Request

On March 10, 2024, plaintiff submitted a health care services request form requesting an MRI and stating he was still in pain and needed "meds" and "ice for the swelling." Pl.'s Medical Records II at AG063. The next day, March 11, 2024, the supervising nurse contacted defendant Dr. Grotke, the on-call chief physician and surgeon, and told Dr. Grotke that plaintiff was "unable to walk due to an ankle injury" and was having trouble "dorsiflexing" the foot. Id. at AG064. No mention was made of trouble plantarflexing. Grotke Decl. (ECF No. 18-5) at 6. Dr. Grotke noted that "there is a question of an Achilles tendon injury" and "[p]atient is housed on the third tier upper bunk," Pl.'s Medical Records II at AG064, and entered a lower bunk/lower tier chrono and lay-in on a Form 7410, directing plaintiff to be housed in a lower bunk on the lowest tier and to be excused from activities, such as work, id. at AG065; Pl.'s Medical Records I (MSJ Ex. A (ECF No. 18-6 at 3)) at AG004, AG022. Dr. Grotke also changed plaintiff's pain medication to Keep on Person (KOP), which permits plaintiff to take prescribed NSAIDs as needed to limit pain, and advanced an in-person medical exam to the next day. Id. at AG004, AG022.

Plaintiff refused to move to the lower tier because he did not want a new cellmate or to move his stuff. Pl.'s Depo. at 46, 47; Grotke Decl. at 7, 10. He had the chrono changed to lower bunk only and continued to navigate three flights of stairs to get to his cell despite medical advice to the contrary and his refusal to accept the lower bunk/lower tier chrono was documented on the record. Pl.'s Medical Records I at AG031; Grotke Decl. at 7, 10.

3

C.    March 12, 2024, In-Person Appointment with Dr. Rios

On March 12, 2024, plaintiff saw Dr. Rios for the advanced in-person exam. Pl.'s Depo. at 36; Rios Decl. at 8. At the appointment, Dr. Rios documented plaintiff having bruising "underneath the medial malleolus which can also suggest a sprain or even rupture." Pl.'s Medical Records II at AG067. She again performed a Thompson Squeeze Test using a standard position, which again was negative because plaintiff exhibited plantarflexion of his ankle. Rios Decl. at 9.

Based on her examination of plaintiff, Dr. Rios stated a primary diagnosis of right ankle sprain:

> The patient appears to have a grade 2 or more medial right ankle sprain from an eversion injury. He is unable to bear weight and has tenderness over the medial malleolus as well as tenderness over the navicular bone. Using the Ottawa ankle rules, he should have both foot and ankle x-rays. Depending on the results he might need to be seen by an orthopedist if there is a fracture, for sprain would recommend a brace with rigid lateral support such as an air cast. He can continue ibuprofen for 100 mg 4 times daily as needed [for] pain.

Pl.'s Medical Records II at AG067. Dr. Rios also assessed the Achilles tendon injury as probably acute tendinopathy:

> Although the patient has a typical history of a sudden jumping movement [while] feeling a "pop", he still has a negative Thompson test. However[,] he also has bruising underneath the medial malleolus which can also suggest a sprain or even rupture. However, he is able to plantar and dorsiflex equally bilaterally so probably has an acute tendinopathy. For an Achilles tendon injury without rupture, he will need rest, ice, NSAIDs. However, if he does not improve can consider an ultrasound to definitively evaluate for rupture.

Id.

For both diagnoses, Dr. Rios ordered ice pack application, x-ray of the right ankle, and x-ray of the right foot. Id. She also ordered a follow-up appointment with plaintiff's PCP in twenty days, which would be enough time for the x-rays and readings to be done. Id.; Rios Decl. at 9.

Plaintiff claims Dr. Rios should have diagnosed him with an Achilles rupture and sent him to an outside hospital because of the visual appearance of his right Achilles tendon and ankle. See Pl.'s Depo. at 40. Plaintiff again contends the Thompson test was not performed correctly. See id. at 37-38. And he adds that Dr. Rios muttered "it costs a lot of money for MRIs" during the exam and told a nurse that she thought it was a fracture. Id. at 36-37.

D.    X-Rays and PCP's Request for MRI

The x-rays of plaintiff's right foot and ankle were performed on the same day they were ordered by Dr. Rios, March 12, 2024. Pl.'s Medical Records I at AG035-37. The x-rays showed "soft tissue swelling about the medial ankle" and a "question[able] nondisplaced fracture of the medial margin of the calcaneus" or heel bone. Id. at AG035, AG036. The radiologist stated, "consider follow-up radiographic of the ankle or CT/MRI for more definitive characterization." Id. In an addendum that same day, the radiologist stated that "[i]f there is high concern for injury or ongoing concern for injury, repeat radiographs in 10-14 days (or immediate cross-sectional imaging) could be performed to evaluate for initially radiographically occult fracture." Id. at AG037.

Two days later, on March 14, 2024, plaintiff reviewed the x-ray results with his PCP, Nurse Practitioner (NP) Okeke, during a telehealth visit. Pl.'s Depo. at 43-44; Feinberg Decl. (ECF No. 18-5) at 5-6. Pursuant to the radiologist's recommendation, NP Okeke submitted a request for an MRI with the primary diagnosis identified as "Achilles tendon injury (S86.009A)." Pl.'s Medical Records I at AG029. Dr. Grotke denied the request the same day stating, "[t]he physical exam does not support Achilles tendon rupture. However, the x-ray is equivocal for calcaneus fracture, and patient very disabled consider re-ordering to clarify x-ray result." Id.

The request for an MRI was not resubmitted. Instead, NP Okeke ordered a second x-ray that was performed on March 20, 2024, and showed no evidence of fracture. Id. at AG014. NP Okeke documented a plan to see plaintiff for follow-up within the next two to four weeks. Id.

The next day, on March 21, 2024, plaintiff submitted a health care services request for "another doctor exam" noting that he was in level 10 pain in his "calf, ankle and heel," and "still walking with a bad limp." Id. at AG005. The form was triaged by RN Yismaw on March 23, 2024, who documented plaintiff's reported pain and scheduled an appointment for March 25, 2024. Id. at AG002. On March 25, 2024, plaintiff was seen by RN Asamoah, who conducted a standard exam and scheduled an appointment for plaintiff to see his PCP on March 28, 2024, to discuss his ongoing pain and potential MRI. Id. at AG030. There is no documentation that a visit took place on March 28, 2024. Feinberg Decl. at 7.

United States District Court
Northern District of California

E.      Achilles Tendon Rupture Diagnosed and Surgically Repaired

On April 3, 2024, plaintiff summoned emergency medical care by calling "man down." Pl.'s Depo. at 60.  He was transported to the TTA where Dr. Rios again was working.  Id. at 63; Rios Decl. at 12.  Plaintiff complained of "uncontrolled" pain and "difficulty waking." Pl.'s Medical Records I at A019.  NP Student Hill examined plaintiff under Dr. Rios's supervision and documented that swelling and pain "specific to the right ankle sprain have mostly resolved" but that a newly performed Thompson Squeeze Test on plaintiff was now "positive."  Id. at AG020. Dr. Rios agreed with Hill's exam and concluded that plaintiff's positive Thompson Squeeze Test suggests "a possible Achilles tendon rupture."  Id.  Dr. Rios further documented "at this point, [plaintiff] needs a high-priority orthopedic consult and will resubmit request for MRI as his exam has changed."  Id.  Plaintiff claims Dr. Rios said, "oops, we all make mistakes."  Pl.'s Depo. at 64.

On that same day, April 3, 2024, Dr. Rios submitted a request for a high-priority orthopedic surgery evaluation.  In the reasons for request field, Dr. Rios wrote, "possible [A]chilles tendon rupture.  Initially normal [A]chilles exam, now with + Thompson squeeze test, unable to lift heel when walking." Pl.'s Medical Records I at AG027.  In the comments field, Dr. Rios wrote, "Patient had medial ankle sprain, kept playing basketball, then jumped in the air, felt a 'pop' with immediate pain.  When first seen, had medial ankle sprain, with medial malleolar and foot pain, XRs negative for [fracture].  Now ankle better but Achilles tendon exam markedly different." Id. at AG028.

Dr. Posson approved the request for an orthopedic evaluation on April 3, 2024, id. at AG027, and Dr. Grotke approved the request for an MRI on April 4, 2024, id. at AG026.

Plaintiff was seen off-site at Twin Cities Community Hospital for an orthopedic consultation on April 10, 2024. Pl.'s Medical Records II at AG115-116.  The treating orthopedic surgeon diagnosed plaintiff with a ruptured Achilles tendon and recommended Achilles tendon repair surgery.  Id. at AG116.  The surgery was approved, and plaintiff underwent surgical repair of his Achilles tendon at Twin Cities Community Hospital on April 17, 2024, id. at AG120-123, two weeks after being diagnosed by Dr. Rios as having "a possible Achilles tendon rupture," Pl.'s Medical Records I at AG020.

United States District Court
Northern District of California

**DISCUSSION**

A.    Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, [as is the case here,] the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings to demonstrate the existence of a genuine dispute of material fact by "citing to specific parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c). A triable dispute of material fact exists only if there is sufficient evidence favoring the nonmoving party to allow a jury to return a verdict for that party. Anderson, 477 U.S. at 249. If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." Celotex, 477 U.S. at 323.

There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 249. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Id. at 249-50.

B.    Analysis

Defendants argue that they are entitled to summary judgment and qualified immunity from

7

plaintiff's claim of deliberate indifference to serious medical needs under § 1983.  Under Saucier v. Katz, 533 U.S. 194 (2001), the court must undertake a two-step analysis when a defendant asserts qualified immunity in a motion for summary judgment.  The court first faces "this threshold question:  Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  533 U.S. at 201.  If the court determines that the conduct did not violate a constitutional right, the inquiry is over, and the officer is entitled to qualified immunity.

If the court determines that the conduct did violate a constitutional right, it then moves to the second step and asks, "whether the right was clearly established" such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 201-02.  Even if the violated right was clearly established, qualified immunity shields an officer from suit when he makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances he confronted.  Brosseau v. Haugen, 543 U.S. 194, 198 (2004); Saucier, 533 U.S. at 205-06.  If "the officer's mistake as to what the law requires is reasonable . . . the officer is entitled to the immunity defense." Id. at 205.[1]

Prison officials violate the Eighth Amendment if they are "deliberate[ly] indifferen[t] to a prisoner's "serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104 (1976).  A medical need is serious if failure to treat it will result in "significant injury or the unnecessary and wanton infliction of pain." Peralta v. Dillard, 744 F.3d 1076, 1081 (9th Cir. 2014) (en banc) (citation and internal quotations omitted).  A prison official is "deliberately indifferent" to that need if he "knows of and disregards an excessive risk to inmate health." Farmer v. Brennan, 511 U.S. 825, 837 (1994).  Neither negligence nor gross negligence is enough. Id. at 835–36 n.4.

A difference of opinion between a prisoner and a physician concerning appropriate medical care does not amount to deliberate indifference. Snow v. McDaniel, 681 F.3d 978, 987 (9th Cir. 2012), overruled on other grounds by Peralta, 744 F.3d 1076; Sanchez v. Vild, 891 F.2d 240, 242

[1]Although the Saucier sequence is often appropriate and beneficial, it is not mandatory.  A court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case.  See Pearson v. Callahan,  555 U.S. 223, 236 (2009).

United States District Court
Northern District of California

(9th Cir. 1989).  Similarly, a showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another generally is insufficient to establish deliberate indifference.  Toguchi v. Chung, 391 F.3d 1051, 1058, 1059-60 (9th Cir. 2004).  To prevail on an Eighth Amendment deliberate indifference claim involving choices between alternative courses of treatment, a prisoner-plaintiff must show that the course of treatment that the doctor-defendants chose was medically unacceptable under the circumstances and that they chose this course in conscious disregard of an excessive risk to plaintiff's health.  Id. at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

To prevail on a § 1983 claim for damages against an individual defendant, a prisoner-plaintiff must show that the defendant's deliberate indifference was the "actual and proximate cause" of the deprivation of plaintiff's Eighth Amendment rights.  Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).  The "inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused the constitutional deprivation."  Id. at 633.

Defendants argue that they are entitled to summary judgment on plaintiff's claim of deliberate indifference to serious medical needs because plaintiff was provided with appropriate medical care for his injury when Dr. Rios saw/treated plaintiff on March 8 and 12, 2024, and when Dr. Grotke denied the MRI on March 14, 2024, and no defendant consciously disregarded an excessive risk to plaintiff's health.

1.      Dr. Rios

The evidence in the record shows that Dr. Rios first saw plaintiff on March 8, 2024.  At this telemedicine visit, Dr. Rios documented that the physical exam of plaintiff's right foot and ankle performed by RN Rutzakis and relayed to her by phone showed no bruising or swelling, and that the Thompson Squeeze Test performed by RN Rutzakis and relayed to her by phone was negative because it showed "normal plantarflexion with calf squeeze bilaterally."  Dr. Rios documented that the normal Thomson test indicated that plaintiff "does not have a complete [Achilles tendon] rupture" and tentatively diagnosed him with "Achilles tend[i]nopathy" or inflammation of the Achilles tendon.  Dr. Rios prescribed plaintiff NSAIDs for pain, crutches to

United States District Court
Northern District of California

United States District Court
Northern District of California

limit further aggravation of his injury, and instructed plaintiff to follow up with his PCP in five days.

Dr. Rios again saw plaintiff on March 12, 2024, for follow-up of his right ankle injury. Dr. Rios performed a detailed physical examination of plaintiff's right ankle, including a Thomson Squeeze Test which again was negative because there was "plantarflexion bilaterally." Dr. Rios's impression was that plaintiff had a right ankle sprain and an Achilles tendon injury without rupture. Dr. Rios documented:

> Although the patient has a typical history of a sudden jumping movement [while] feeling a "pop", he still has a negative Thompson test. However[,] he also has bruising underneath the medial malleolus which can also suggest a sprain or even rupture. However, he is able to plantar and dorsiflex equally bilaterally so probably has an acute tendinopathy. For an Achilles tendon injury without rupture, he will need rest, ice, NSAIDs. However, if he does not improve can consider an ultrasound to definitively evaluate for rupture.

Pl.'s Medical Records II at AG067. Dr. Rios ordered ice pack application, x-ray of the right ankle and foot, and a follow-up appointment with plaintiff's PCP in twenty days.

Plaintiff has not set forth any probative evidence that Dr. Rios's treatment plan after the March 8 and 12, 2024 visits was medically unacceptable under the circumstances and that Dr. Rios consciously disregarded an excessive risk to plaintiff's health. See Toguchi, 391 F.3d at 1058. The evidence in the record makes clear that Dr. Rios considered the possibility of an Achilles tendon rupture at both visits but ruled it out after plaintiff's physical examination and negative Thompson Squeeze Test results. It also shows that Dr. Rios's chosen treatment plan – rest, ice and NSAIDs for a suspected tendon injury without rupture – was medically acceptable under the circumstances and that Dr. Rios did not consciously disregard the possibility of a rupture – she ordered x-rays and a follow-up appointment in case the injury did not improve and an ultrasound or other test was needed to reevaluate for rupture. Accord Feinberg Decl. at 9 ("Dr. Rios appropriately considered the possibility of an Achilles tendon rupture at each encounter.").

Nor has plaintiff set forth any probative evidence that Dr. Rios improperly denied and delayed adequate medical care for his serious injury by dismissing it as an ankle sprain to save money. The evidence in the record shows that Dr. Rios ordered x-rays and a follow-up

appointment after the March 12, 2024, visit in case the injury did not improve and an ultrasound or other test was needed to evaluate for rupture, and that she promptly requested a high-priority orthopedic consultation and MRI after plaintiff's subsequent April 3, 2024, visit showed a positive Thompson test indicating "a possible Achilles tendon rupture."  Nothing in the record suggests that Dr. Rios denied and delayed adequate medical care for plaintiff's ankle tendon injury to save money.  Accord id. at 9, 10 (claim that Dr. Rios failed to properly diagnose and treat Achilles tendon injury because surgery was too costly not supported by medical record).[2]

Defendants are entitled to summary judgment on plaintiff's § 1983 claim of deliberate indifference to serious medical needs against Dr. Rios.  No reasonable jury could find based on the evidence in the record that Dr. Rios knew of and disregarded an excessive risk to plaintiff's health. See Farmer, 511 U.S. at 837.[3]  That Dr. Rios perhaps should have diagnosed plaintiff with an Achilles tendon rupture sooner than she did amounts to no more than a claim for medical negligence not cognizable under § 1983.  See id. at 835–36 n.4.

2.    Dr. Grotke

The evidence in the record shows that Dr. Grotke did not personally see or treat plaintiff. On March 11, 2024, Dr. Grotke documented a phone call he received from a supervising nurse reporting that plaintiff was "unable to walk due to an ankle injury" and was having trouble "dorsiflexing" that foot.  Dr. Grotke entered orders changing plaintiff's housing assignment from the third floor to the first floor and from an upper bunk to a lower bunk (plaintiff later refused to move from his cell on the third floor), updated plaintiff's pain medication to make sure he could keep them on his person and take as needed, and moved up plaintiff's next in-person medical exam to the next day.

---

[2] Plaintiff's claim that Dr. Rios muttered "it costs a lot of money for MRIs" during the March 12, 2024, exam does not compel a different conclusion.  MRIs do cost a lot of money, but when the need for one was indicated after a positive Thompson test during plaintiff's April 3, 2024, exam, Dr. Rios promptly requested one.

[3] Dr. Rios also is entitled to qualified immunity from damages because a reasonable health care provider could have believed that his or her conduct – diagnosing and treating ankle injury as ankle tendon injury without rupture in view of multiple negative Thompson tests and ordering follow up in case injury did not improve and rupture needs to be reconsidered – was lawful under the circumstances.  See Saucier, 533 U.S. at 210-02.

11

On March 14, 2024, Dr. Grotke received a request from NP Okeke for an MRI of plaintiff's right ankle with the primary diagnosis identified as "Achilles tendon injury (S86.009A)." Dr. Grotke denied the request because the underlying radiologist's specific concern about plaintiff's March 12, 2024, x-rays was a possible calcaneus fracture that may need to be followed up with additional x-rays or with a CT scan or MRI, rather than a possible Achilles tendon rupture. Dr. Grotke noted that plaintiff's recent physical exams, which included two negative Thompson tests, did not support an Achilles tendon rupture. Dr. Grotke recommended that NP Okeke reorder diagnostic test(s) to clarify the result of the March 12, 2024, x-rays that were equivocal for calcaneus fracture.

Plaintiff has not set forth any probative evidence that Dr. Grotke's March 14, 2024, denial of NP Okeke's request for an MRI of plaintiff's right ankle was medically unacceptable under the circumstances and that Dr. Grotke consciously disregarded an excessive risk to plaintiff's health. See Toguchi, 391 F.3d at 1058. The evidence in the record makes clear that NP Okeke's request for an MRI of plaintiff's right ankle, as written, was based on a possible Achilles tendon rupture which was not indicated by the radiologist's concerns/recommendations or by plaintiff's physical examinations. Plaintiff's two most recent physical exams at the time showed two negative Thompson tests for a possible Achilles tendon rupture. The evidence shows that Dr. Grotke's March 14, 2024, denial of NP Okeke's request for an MRI of plaintiff's right ankle was not medically unacceptable under the circumstances or done in conscious disregard of an excessive risk to plaintiff's health. After all, Dr. Grotke recommended that NP Okeke reorder diagnostic test(s) to clarify the result of the March 12, 2024, x-rays that were equivocal for calcaneus fracture and, on April 4, 2024, promptly approved Dr. Rios's request for a high-priority MRI after plaintiff's physical exam on that same day had changed and supported a possible Achilles tendon rupture. Accord Feinberg Decl. at 10 (claim that Dr. Grotke failed to render necessary care when he denied request for MRI on March 14, 2024, not supported by medical record).

Defendants are entitled to summary judgment on plaintiff's § 1983 claim of deliberate indifference to serious medical needs against Dr. Grotke. No reasonable jury could find based on the evidence in the record that Dr. Grotke knew of and disregarded an excessive risk to plaintiff's

12

health.  See Farmer, 511 U.S. at 837.[4]  That Dr. Grotke perhaps should have approved an MRI of plaintiff's right ankle sooner than he did amounts to no more than a claim for medical negligence not cognizable under § 1983.  See id. at 835–36 n.4.

**CONCLUSION**

For the foregoing reasons, defendants' motion for summary judgment (ECF No. 18) is GRANTED.

**IT IS SO ORDERED**.

Dated:  June 2, 2026

_____
CHARLES R. BREYER
United States District Judge

---

[4] Dr. Grotke also is entitled to qualified immunity from damages because a reasonable health care provider could have believed that his or her conduct – denying request for MRI based on possible Achilles tendon rupture which was not indicated by radiologist's concerns/ recommendations or by plaintiff's physical examinations and recommending reorder of diagnostic test(s) for possible calcaneus fracture – was lawful under the circumstances.  See Saucier, 533 U.S. at 210-02.

13